LEONARD E. SINGLETON, Planitiff in Error,

### vs.

MIRIAM GORDON, MELVIN SINGLETON, GEORGE SINGLETON, HELEN SINGLETON, and MAY M. MAXWELL. Defendants in Error.

(No. 2254; Dec. 21, 1943; 144 P. 2d 138)

**28**

*D. W. Ogilbee,* of Casper, for plaintiff in error.

*Jeremiah F. Mahoney,* of Casper for defendant in error, May M. Maxwell.

30

## OPINION

BLUME, Justice.

This is an action for a declaratory judgment for the purpose of declaring the rights of the parties in and

to the West Half (W½) of Lots numbered One (1) and Two (2), in Block numbered One Hundred Twenty-one (121), of the City of Casper, Wyoming. None of the parties was satisfied with the judgment herein. The facts are substantially as follows:

The defendent, Miriam Gordon, is the mother of the plaintiff, Leonard E. Singleton. Helen Singleton is the wife of the plaintiff and has never lived in the State. Melvin Singleton and George Singleton are children of the plaintiff and his wife. May M. Maxwell is the purchaser of the premises herein involved as hereinafter mentioned. On February 3, 1938, the defendant, Miriam Gordon, being then owner of the property herein involved, subject to a life estate of Roderick Gordon, her husband, gave a deed to the property, for and in consideration of one dollar and other good and valuable considerations. The deed is the usual statutory short form warranty deed but with special provisions, and reads as follows:

"Miriam Gordon, wife of Roderick Gordon, grantor, of Natrona County, and State of Wyoming, for and in consideration of One Dollar ($1.00) and other good and valuable consideration, receipt whereof is hereby acknowledged, conveys and warrants against her own acts but upon the conditions herein expressed to Leonard E. Singleton, grantee of McCone County and State of Montana, *and share and share alike to the then living heirs of said primarily named grantee if he is deceased upon the date of death of the survivor of said Miriam Gordon and said Roderick Gordon,* the following described real estate situate in Natrona County and State of Wyoming, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the State, to-wit: (description of property)

Grantor certifies that the property so conveyed has been her sole and separate estate since deed thereto to her from her said husband. Dated July 20, 1936, recorded in said County Clerk's office July 22, 1936.

Grantor reserves during her lifetime and that of her said husband, if he survives her, the right to exclusive possession of the property aforesaid and all values accruing therefrom. *This instrument is a present conveyance of legal title with postponement of possessory rights only* and is not testamentary in character. (Italics are ours)

On May 17, 1941, the defendant, Miriam Gordon, for and in consideration of one dollar and other valuable consideration, gave to the plaintiff, Leonard E. Singleton, her warranty deed conveying to the plaintiff the absolute title to the property herein involved. This deed contains the following recitals:

"It is covenanted and agreed by and between the parties hereto that the grantor holds a life estate in and to the said premises and that this deed is given for the purpose of conveying to the grantee the said life estate and to merge and extinguish the said life estate in the reversion and inheritance of said premises and that the said grantee herein shall hereafter hold said premises free of the burden of the life estate of the grantor the same as might be effected by the sometimes used more formal clause which reads as follows: 'To have and to hold the said property unto the said Leonard E. Singleton, his heirs and assigns subject to the estate for life of the said Miriam Gordon therein, to the intent that the same may merge and be extinguished in the reversion and the inheritance of said premises, and that the said Leonard E. Singleton thereafter may be seized of or entitled to the fee simple and inheritance in possession thereof.' "

Roderick Gordon, mentioned in the deed first above set out, died on April 18, 1941, so that his interest in the property ceased at that time. Subsequent to the execution of the second deed above mentioned the plaintiff, Leonard E. Singleton, entered into a contract for the sale of the property herein involved to the defendant, May M. Maxwell. After examination of the title, the purchaser refused to consummate the

transaction without first obtaining judicial determination and declaration that the seller has a good and lawful right to convey the property free and clear of any claims of the defendants herein, claiming that the title to the property is in doubt. Thereupon, the plaintiff, Leonard E. Singleton, brought this action for a declaratory judgment for the purpose of having the meaning of the deeds hereinabove mentioned construed and to have the legal effect thereof and the extent of the interest of the plaintiff in question declared. The wife and the children of the plaintiff filed their answer, merely admitting the allegations set forth in the petition of the plaintiff and asking the court to construe and interpret the deeds herein above mentioned. Miriam Gordon filed her answer, stating in substance that she, by the deed of February 3, 1938, intended to convey the entire fee simple title in and to the premises herein involved to the plaintiff, Leonard E. Singleton, subject only to the life estate of herself and husband. The defendant, May M. Maxwell, filed her answer alleging that she is willing to consummate the purchase of the premises, provided that the plaintiff can show that he has a fee simple title free and clear of the rights of the remaining defendants, and that the title of the plaintiff is in doubt.

The court declared as follows:

1. That the plaintiff has a life estate in and to the premises involved herein so long as the defendant, Miriam Gordon, shall be living.

2. "That the plaintiff, Leonard E. Singleton, has a vested remainder in fee simple in and to the property herein involved, subject to divestment by the death of the plaintiff prior to the death of the defendant, Miriam Gordon, and which said vested remainder will

ripen into a fee simple absolute title in the event plaintiff shall survive the said Miriam Gordon."

3. "That in the event of the death of Leonard E. Singleton, prior to the death of Miriam Gordon, the fee simple absolute title to the premises is vested under the deed of February 3, 1938, upon the death of Miriam Gordon, in the heirs of Leonard E. Singleton, who were living on the 3rd day of February, 1938, to-wit, Helen Singleton, should she survive Leonard E. Singleton as his spouse, and George Singleton and Melvin Singleton or the survivor or survivors of them who may also survive Miriam Gordon."

From the judgment so entered by the Court the Plaintiff brought this case here by petition in error. The parties will be designated herein as in the court below, or by other appropriate terms.

Counsel for the parties admit that they have found no cases in which the facts are like those in the the earliest possible moment. 26 C. J. S. 407. The case at bar. The law favors the vesting of estates at deed of February 3, 1938, provides that it constitutes a present conveyance of legal title with postponement of possesory rights only. And unless the case falls within the rule of Shelley's Case, which is doubtful, the court was doubtless correct in holding that under that deed Leonard E. Singleton received a vested interest, subject to be divested if he should not survive Miriam Gordon, or, possibly, subject to be partially divested, if he should not so survive. Parker v. Ross, 69 N. H. 213, 45 Atl. 576; Zinsmeister's Trustee v. Long, 250 Ky. 50, 61 S. W. (2d) 887; Goodrich v. Bonham, 142 Neb. 489, 6 N. W. (2d) 788; Bailey v. Strebronsky, 57 Ohio App. 265, 13 N. E. (2d) 588; Blanchard v. Blanchard, 1 Allen (Mass.) 223; Ghormley v. Kleedon, 155 Kan. 319, 124 Pac. (2d) 467; 26 C. J. S.

407. The interest of the surviving heirs was contingent depending on whether or not Leonard E. Singleton would survive his mother. 26 C. J. S. 408. The contention made by the defendant, Maxwell, however, is that if this is correct the surviving heirs of the plaintiff took an estate by conditional limitation; that in view of the fact that under that deed only the surviving heirs take any interest, parties not yet in existence might be the heirs at the time of the death of Miriam Gordon, and that the Court was incorrect in holding that only those of the surviving heirs who were living at the time of the execution of the deed would take any interest in the property in case the plaintiff should be deceased at the time of the death of Miriam Gordon. The law on the subject seems to be well stated in the Restatement of The Law of Property, Sec. 295, where it is said:

"When an otherwise effective conveyance contains the limitation of a postponed gift in favor of a class described as 'children,' 'grandchildren,' 'brothers,' 'sisters,' 'nephews,' 'nieces,' 'cousins,' 'issue,' 'descendants' or 'family' of a designated person, then unless a contrary intent of the conveyor is found from additional language or circumstances, such conveyance designates as the distributees thereunder all who are 'possible takers' within the group description found in such limitation and who are conceived prior to the termination of the postponement caused by the limitation."

In the comments to that Section on Page 1585, it is stated:

"When a conveyance, without creating a trust, limits a life interest, or an interest for years, or an ownership defeasible upon some occurrence, and then provides that upon the ending of such prior interest, the property affected thereby shall go to a class, then * * * this class gift is a 'postponed gift in favor of a class,' as this phrase is used in this Section."

See also 69 C. J. 342, 355; 26 C. J. S. 406.

It would seem accordingly that the declaration of the court on this point was incorrect.

The plaintiff, Leonard E. Singleton, contends that his interest in and to the property involved herein, received under the deed of February 3, 1938, was not a defeasible estate and not subject to divestment, but that he received an absolute title to the property subject only to the life estate of Miriam Gordon. Counsel for plaintiff claims that the case is governed by the rule in Shelley's Case. The rule in that case is stated in 47 Am. Jur. 793, to be as follows:

"When the ancestor by any gift or conveyance takes an estate of freehold and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, then always in such cases 'the heirs' are words describing the extent or quality of the estate conveyed, and not words designateding the persons who are to take it."

In other words, the grantee of an estate of freehold in such cases takes an absolute indefeasible title in view of the fact that no living person can have an heir. The rule, however, does not apply if the term "heirs" is not used in a technical sense, but is used as a description of the persons who are to take directly from the grantor. 26 C. J. S. 423. Thus it has been said that a grant to "my son for his use during the period of his natural life and upon his demise to his heirs at law him surviving, share and share alike," takes the case out of the rule in the Shelley Case. Burgess v. Thompson, 13 R. I. 712. Cases similar in effect are: Hill v. Giles, 201 Pa. 215, 15 Atl. 738; Gadsden v. Desportes, 39 S. C. 131, 17 S. E. 706; Granger v. Granger, 147 Ind. 95, 44 N. E. 189, 46 N. E. 80, 36 L. R. A. 186, 190; Moore v. Parker, 34 N. C. 127. While there are cases to the contrary, we are not prepared to hold that the case comes within the rule

of Shelley's Case. At least there is some doubt about it and it is not necessary to decide it herein.

There remains for consideration as to whether or not the interests of the plaintiff were accelerated by virtue of the deed of May 17, 1941, and the interests of the heirs mentioned in the previous deed eliminated. We have, under our law, a well known doctrine of acceleration of interests. In 31 C. J. S. 95-96, it is said: "A vested remainder is said to be accelerated where the time for its vesting in posession is shortened by the premature determination of the preceding estate, or where such estate is for some reason incapable of taking effect, whether by reason of death, incapacity, remarriage, renunciation or other circumstance resulting in the termination of the whole particular estate, and not merely of the interest of one among several interested in it. A vested remainder may be accelerated, although future contingent interests will thereby be cut off." See also 33 Am. Jur. 625-627. While we have not found any case dealing with facts like those in the case at bar, and while the cases on the subject almost all appear to deal with the doctrine in connection with wills, we see no reason why it should not in the proper case be applied to deeds, since a will constitutes but a species of conveyance. In fact it appears herein that the deed of February 3, 1938, was to take the place of a will. A great many of the cases deal with a devise to a wife during life and the remainder to the children or to some other person. It is held in these cases that if the widow renounces her rights under the will the estate in remainder is accelerated and comes into effect at once. In the case of Sherman v. Flack, 283 Ill. 457, 119 N. E. 293, 5 A. L. R. 456, it is stated:

"The doctrine of acceleration of remainders proceeds upon the supposition that, although the ulti-

mate devise is in terms not to take effect in possession until the death of the life tenant, yet in point of fact it is to be read as a limitation of a remainder to take effect in every event which removes the prior estate out of the way. The doctrine is founded upon the presumed intention of the testator that the remainderman should take on the failure of the previous estate, notwithstanding the prior donee may be still alive, and is applied in promotion of the presumed intention of the testator, and not to defeat his intention. Where the intention of the testator is evident that the remainder should not take effect until the expiration of the life of the prior donee, the remainder will not be accelerated."

And in an Annotation in 5 A. L. R. 480, it is stated:

"When, therefore, it appears that possession of the remainderman is postponed solely for the purpose of letting in the life estate, it is presumably the intention of the testator that a renunciation of the life estate shall be considered as equivalent to its termination by the death of the life tenant, and that the beneficiaries entitled in remainder shall enter into its enjoyment at once. This presumption may be negatived by indications of a contrary intention. According to the weight of authority, the fact that the right to take as remainderman is, on the face of the will, apparently contingent upon surviving the death of the life tenant, as where the remainder is contingent upon that event * * *, or where there is an alternative substitutional gift * * *, will not prevent acceleration."

In Sec. 231 e, Restatement of The Law on Property, it is stated:

"When the renounced interest is the only hindrance to the succeeding interest becoming forthwith a present interest, then acceleration which occurs in accordance with the rule stated in this Section causes such succeeding interest to become forthwith a present interest."

In Simes Law of Future Interests, Vol. 3. 239, Sec. 758, the author, in considering the subject, mentions a sit-

uation somewhat similar to that in the case at bar, namely:

"A typical case would involve limitations as follows:

To testator's wife for life, and on her death to A in fee, but if, at the wife's death, A is not living, then to B in fee. According to recognized doctrines as to the nature of vested remainders, A's remainder would become a present estate, however the wife's estate is terminated, and regardless of the sort of vested remainder, we are considering."

The Restatement of The Law of Property, Sec. 231 h and Appendix III, pp. 60-63, takes the same position. Such a situation is considered in Randall v. Randall, 85 Md. 430, 37 Atl. 209, in which the court, among other things, stated as follows:

"The rule followed by both the English and American Courts is, that a widow's renunciation and election to take as against the will is equivalent to her death, unless it contravenes some manifest intention of the testator as expressed by the will. In Clarke et. al. v. Tennison et. al., 33 Md. 92, where by the will a gift was to the wife, during her widowhood, with a limitation over to the children upon her death, it was held, in order to carry out the plain intention of the testator, that the will should be construed as giving the property to the children upon the termination of the estate given to the wife, whether that be by her marriage or her death. In Ferguson's estate, 138 Pa. St. 208, the Court in a well considered case, after stating the reasons for the rule, says, that the law must have a settled and uniform rule, and it is that the widow's election to take against the will is equivalent to her death."

These authorities deal with a situation in which there was a *grant* of a life or other limited estate to one person and a grant of the remainder to some one else. In the case at bar there was a *retention* of a life estate and a grant of the remainder to others, that in Leonard E. Singleton being a vested interest. We see

no vital distinction between a grant of a limited estate of the nature herein involved and a rentention thereof, so far as the application of the doctrine of acceleration of interests is concerned. The situations are similar. The law has grown and has been developed by analogy. The situation in this case is, we think, sufficiently close, and related, to the situations mentioned, so that the analogy cannot be said to be too remote. There was a renouncement of the life estate in the case at bar as effectual, and similar in nature, as the renouncement in the cases above considered. Thus it has been held that a release to the trustee under a will, instead of a renunciation, of a life interest in an estate, accelerates the interest of the remainderman. Young v. Eagon, 131 N. J. Eq. 574, 26 Atl. (2d) 180; Simpkins v. Simpkins, 131 N. J. Eq. 227, 24 Atl. (2d) 821; Bennett v. Fidelity Union Trust Company, 123 N. J. Eq. 198, 196 Atl. 375; Anthony v. Camden Safe Deposit & Trust Co., 106 N. J. Eq. 41, 149 Atl. 822. In the Bennett case, the court stated in that connection that "it is the most natural presumption that a testator would desire the fund or estate to go, on the termination of a life estate by some cause other than the life tenant's death, in exactly the same way as if the termination had been caused by the life tenant's death. Hence such has been laid down as the rule where there is no different intent or desire on the part of the testator evident from the will." The court mentions the fact that its conclusion is in harmony with the Restatement of the Law of Property. The authorities are not, perhaps, altogether uniform on the point. See for instance Cummings v. Hamilton, 220 Ill. 480, 77 N. E. 264. In that case only a part of the life estate was conveyed. Of course, a life estate may be kept alive when conveyed to a third party, or even to the owner in fee. But the intent should not be ig-

nored. Special facts are presented in the case at bar. Not only was Miriam Gordon creator of her life estate, but the person in enjoyment thereof as well. The deed of May 17, 1941, was made for the express purpose of accelerating the interest of Leonard E. Singleton and extinguishing and destroying the life estate, so as to get it out of the way and merge it with the ownership in fee. It would be altogether too technical to attempt to distinguish that method of destruction of the life estate from that appearing in the New Jersey cases, supra, so far as the effect thereof is concerned. According to Bennett v. Fidelity Union Trust Co., supra, supported by Young v. Eagon, supra, and other cases, the method of terminating the life estate makes no difference, and that seems to be logical and reasonable, and we think it was terminated in this case.

The rule of acceleration of interest as applicable to a deed was discussed in the case of Miller v. Miller, 91 Kan. 1, 136 Pac. 953; L. R. A. 1915 A 671; Ann. Cas. 1917 A 1918. The case is not in conflict with the conclusion reached by us. In that case a deed was given by a father to his son for his life; a life estate also to the wife's son, should she survive the latter; the remainder was granted to the heirs of the body of the son, with reversion to the grantor. Possessory interest was reserved by grantor. The court held that the doctrine of acceleration should not be applied, the court stating in part:

"The rule is equitable in character and proceeds upon the assumption that the gift over of the fee was the principal thing in the testator's mind, that the life estate was a mere charge on that gift and that he desired the gift in fee to take effect whenever the life estate for any cause was out of the way. The rule applies to other situations, but never when the result would be contrary to the testator's intention. * * * * The rule, however, will rarely govern grants by deed."

It may be true, as the court states, that the rule of acceleration of interests can not often be applied to deeds, but the court recognizes the fact that it may be so applied, and that the governing principal is that of intention.  The facts in the case at bar are totally dissimilar to the facts in the Kansas case.  In that case only a life estate was granted to the son, because of his disolute life, and so that he could not squander the property.  The estate given to Leonard E. Singleton by the deed of February 3, 1938, was not so limited; he received a vested estate, subject only to defeasance.  He is the son of Miriam Gordon, the grantor.  He was the natural object of her bounty.  There is nothing to indicate, as in the Kansas case, that the grantor had the special interest of the heirs of Singleton at heart, as against the interests of her son, or that the grant to him was made merely as a charge on the interest of the heirs.  On the contrary, it is obvious that the contingent interest of the heirs was of secondary consideration.  She ordinarily would have no desire to postpone the interest given to her son any longer than necessary for her own protection, and there is nothing in the case which indicates that what would ordinarily be true was not true in this case.  In the language of the court in the case of Bennett v. Fidelity Union Trust Co., supra, there is every reason to believe that she wished the property to go to her son on the termination of the life estate prior to her death, and that she had no desire to keep open for the heirs of her son the opportunity of taking the corpus in the contingency that she should survive him.  Hence, if, as stated in the Kansas case, the nature of the rule under discussion is equitable, there is nothing in the case, which would justify us in refusing to apply it here, particularly in view of the fact, as already stated, that the deed was made as a family settlement dur-

ing the life of Miriam Gordon in place of making a will. By the express terms of the first deed, she conveyed a present title, and the possessory right only was retained. It is quite apparent that protection to herself and her husband was the only reason why the enjoyment of the property in possession by her grantee or grantees was not made immediate, and the intention clearly was, we think, that when that protection should no longer be found to be necessary, and that when the possessory right should be terminated, the complete title should then vest in the parties mentioned in the instrument, namely in Leonard E. Singleton, if he should then be alive, or in his surviving heirs, if he should be deceased at that time. The possessory rights of the husband of Miriam Gordon terminated by his death on April 18, 1941. She almost immediately thereafter terminated her own possessory right by the deed of May 17, 1941, to Leonard E. Singleton, the same party mentioned in the deed of February 3, 1938. The grantee of the deed of May 17, 1941, was then alive, and we think, accordingly that by that conveyance, the complete and indefeasible title to the property was then vested in him, free and clear of any claims on the part of his surviving heirs living or yet to come into existence thereafter, as mentioned in the deed of February 3, 1938. No reason, therefore, is perceived, why, by his conveyance, he cannot vest a complete and indefeasible title in the purchaser from him.

The judgment of the trial court, accordingly is reversed, and inasmuch as it is advisable that a record be made in Natrona County of the title vested in Leonard E. Singleton, the cause is remanded to the District Court of Natrona County, with direction to enter a judgment in conformity with this opinion, and

44

for further proceedings, if deemed advisable, not inconsistent herewith.

*Reversed.*

KIMBALL, C. J., and RINER, J. concur.